UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AFC, INC. ET AL.                                        CIVIL ACTION

VERSUS                                                  No. 16-16560

MATHES BRIERRE ARCHITECTS                               SECTION I

### ORDER AND REASONS

This case arises out of the construction of the Boomtown Casino in Harvey, Louisiana. Defendant Mathes Brierre Architects ("Mathes Brierre") designed the plans for the Boomtown project; plaintiff AFC, Inc., doing business in Louisiana as AFC, Inc. of Mississippi ("AFC") was a subcontractor for the project's general contractor, the Lemoine Company, LLC ("Lemoine").

Mathes Brierre requests a set of jury instructions and jury interrogatories related to the AFC-Lemoine subcontract.[1] In a nutshell, Mathes Brierre's position is that 1) the license that permits AFC to provide building construction services in Louisiana is in the name of "AFC, Inc. of Mississippi";[2] 2) contracting agreements involving unlicensed contractors violate Louisiana public policy and as such are null and void; 3) AFC's use of "AFC, Inc."— and failure to use "AFC, Inc. of Mississippi" or "AFC, Inc., d/b/a AFC, Inc. of Mississippi"—as the party executing the AFC-Lemoine subcontract morphs the subcontract into one involving an unlicensed party; 4) the subcontract is null and void; and 5) a portion of the damages that AFC is now

---

[1] *See* R. Doc. No. 84.
[2] *See* R. Doc. No. 82-6.

1

seeking from Mathes Brierre in this implied indemnity action are unavailable to AFC as a result.

Even assuming that the subcontract is relevant in this case,[3] the Court readily concludes that Mathes Brierre's argument is without merit.

According to the Fifth Circuit:

> [t]he Louisiana legislature has enacted a broad licensing scheme for contractors within [Louisiana], designed for "the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract."

*Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258-59 (5th Cir. 2009) (quoting La. R.S. § 37:2150). Pursuant to this scheme, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined [in La. R.S. § 37:2150.1(4)(a)], unless he holds an active license as a contractor" issued by the Louisiana State Licensing Board for Contractors. La. R.S. § 37:2160(A)(1). AFC and Mathes Brierre do not dispute that the AFC-Lemoine subcontract fell within the scope of the state licensing scheme or that AFC qualified as a "contractor" under the scheme. *See id.* § 37:2150.1 (definitions).[4]

---

[3] Mathes Brierre was not a party to the AFC-Lemoine subcontract. Moreover, the present case is an implied indemnity action, and the Court questions whether Mathes Brierre's attempt to deconstruct the damages that AFC now seeks is appropriate. After all, as the Court has pointed out to the parties, "[l]egal indemnity is ultimately an equitable doctrine that entitles plaintiffs to compensation for an *entire* damages award occasioned by another party's fault." R. Doc. No. 60, at 4 (emphasis added).

[4] *See* R. Doc. No. 82; R. Doc. No. 84.

"Louisiana courts have long recognized that statutory licensing requirements 'were enacted to protect an interest vital to the public order'" and so have consistently "invalidate[d] contracting agreements entered into with unlicensed contractors." *Tradewinds Envtl. Restoration*, 578 F.3d at 259 (quoting *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584-85 (La. Ct. App. 3rd Cir. 1983) and citing cases); *see also* La. Civ. C. art. 7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity."); La. Civ. C. art. 2030 ("A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral."). Given "Louisiana's rule of absolute nullity for a contracting agreement entered into without the benefit of a contractor's license," unlicensed contractors providing contractual services under such agreements may recover only "the actual cost of materials, services and labor." *Tradewinds Envtl. Restoration*, 578 F.3d at 260 (quoting *Alonzo v. Chifici*, 526 So. 2d 237, 243 (La. Ct. App. 5th Cir. 1988)) (internal quotation marks omitted). Unlicensed contractors "are not entitled to an allowance for profit and overhead." *Alonzo*, 526 So. 2d at 243.

All parties agree that "AFC, Inc. doing business in Louisiana as AFC, Inc. of Mississippi" is the proper plaintiff in this case.[5] AFC, Inc.—a Mississippi corporation[6]—added "of Mississippi" to its name for purposes of doing business in

---

[5] *See* R. Doc. No 67 at 1.
[6] The Court takes judicial notice of business filings with the Mississippi Secretary of State.

Louisiana so as to distinguish itself from a similarly named company.[7] The subcontract between AFC and Lemoine does *not* involve an unlicensed contractor, then, because "AFC, Inc." and "AFC, Inc. of Mississippi" are the same entity for all relevant purposes. *Cf. Cableguard Sys., Inc. v. Mid-Continent Cas. Co.*, 73 Fed. App'x 28, 31 (5th Cir. 2003) ("Vicari mistakenly assumes . . . that Cableguard and Dictograph are different entities. . . . Dictograph is merely an assumed trade name of Cableguard.").

Moreover, AFC's use of "AFC, Inc." on its contract with Lemoine was perfectly legal, despite its registration of "AFC, Inc. of Mississippi" with the Louisiana Secretary of State. "Under Louisiana law, 'a corporation may enter into a binding contract under an assumed name absent any fraud or deceit.'" *Cableguard Sys.*, 73 Fed. App'x at 31 (quoting *Pro Source Roofing, Inc., v. Boucher*, 822 So.2d 881, 884 n.2 (La. Ct. App. 2d Cir. 2002)). Mathes Brierre does not suggest that AFC engaged in fraud or deceit when executing the AFC-Lemoine subcontract.

The interpretation of the Louisiana licensing scheme and applicable case law that Mathes Brierre asks this court to adopt is, frankly, a superficial one. "Courts should not adopt a hypertechnical construction of a [Louisiana] statute when a reasonable interpretation can be adopted which will carry out the legislative intent." *J. Caldarera & Co., Inc. v. Hosp. Serv. Dist. No. 2 of the Parish of Jefferson*, 707 So. 2d 1023, 1026 (La. Ct. App. 5th Cir. 1998).

---

[7] *See* R. Doc. No. 82-7, at 1-2. The Court takes judicial notice of business filings with the Louisiana Secretary of State.

4

The Louisiana legislature's intent behind the statutory prohibition on work by unlicensed contractors is "the protection of the health, safety, and general welfare." *Tradewinds Envtl. Restoration*, 578 F.3d at 258 (quoting La. R.S. § 37:2150) (internal quotation marks omitted). Bearing this purpose in mind, Louisiana courts have routinely rejected readings of this prohibition that exults form over function. For example, courts have rejected the conclusion that the licensing scheme requires "that two competent, adequately licensed entities, may not join together to bid and perform a public project [as a joint venture] *without* obtaining a *third*, and *useless* license." *Id.* Moreover—and more relevant to the situation in this case—Louisiana courts have held that the use of one corporate name on a license and a different corporate name on a contract, where the names represent the same corporate entity, does *not* render the contract unlawful. *See Pro Source Roofing*, 822 So. 2d at 884 ("Since the name change from Pro Source Roofing and Guttering, Inc. to Pro-Source Roofing, Inc. did not create a new entity, we find that the Louisiana contractor's license issued to Pro–Source Roofing and Guttering, Inc. was effective as to Pro–Source Roofing, Inc. . . . .").

Against this jurisprudential backdrop, the Court rejects Mathes Brierre's proposed jury instructions and jury interrogatories concerning licensing. Moreover, the Court notes its disappointment with respect to the fact that Mathes Brierre's brief on the licensing issue does not cite—let alone discuss—relevant case law that contradicts Mathes Brierre's position.

Accordingly,

5

**IT IS ORDERED** that Mathes Brierre's request for jury instructions and jury interrogatories on the issue of licensing is **DENIED**.

New Orleans, Louisiana, September 26, 2017.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE